MAO

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* *or identify the person by name and address)* | ) ) | Case No.   '23  MJ0294 |
| Red iPhone Cellular Phone Case Number: SYS-23-01-0064 ("Target Device 1") | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A-1, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8, USC sec. 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit of CBP Enforcement Officer Ramon A. Galindo, U.S. Customs and Border Protection, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Ramon A. Galindo, U.S. Customs and Border Protection
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____  *(specify reliable electronic means).*

Date: _____ 01/25/2023 _____

*Judge's signature*

City and state:  San Diego, California

Hon. DANIEL E. BUTCHER, U.S. Magistrate Judge
*Printed name and title*

1

## ATTACHMENT A-1

2

PROPERTY TO BE SEARCHED

3

4   The following property is to be searched:

5               Red iPhone Cellular Phone
              Case Number:  SYS-23-01-0064

6
               ("Target Device 1")

7
    Target Device is currently in the custody of the Department of Homeland Security,

8   Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, CA.

9

10

11

12

13

14

15

16

17

18

19

20

21

## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-1 and A-2, includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence e to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of December 25, 2022 to January 23, 2023:

    a.    tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c.    tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d.    tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Devices and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.

**AFFIDAVIT**

I, Ramon A. Galindo, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.    I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

> Red iPhone Cellular Phone
>
> Case Number:  SYS-23-01-0064
>
>  ("Target Device 1")
>
> Blue iPhone Cellular Phone
>
> Case Number:  SYS-23-01-0064
>
>  ("Target Device 2")

the ("Target Devices"), as further described in Attachment A-1 and A-2, and to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.    The requested warrant(s) relate(s) to the investigation and prosecution of Julio Cesar AHUMADA for bringing in unlawful aliens without presentation. The Target Devices are currently in the custody of Department of Homeland Security, Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, CA.

3.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents.  This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of the investigation into this matter.   Dates and times are approximate.

1

**TRAINING AND EXPERIENCE**

4.     I have been employed by U.S. Customs and Border Protection since 2003 and am currently assigned to the San Ysidro Criminal Enforcement Unit. I graduated from the CBP Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5.     My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6.     During my tenure as a CBP Officer, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California.  I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal

1   activities.  Because they are mobile, the use of cellular telephones permits alien smugglers

2   and transporters to easily carry out various tasks related to their smuggling activities,

3   including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit,

    providing instructions to transporters, guiding aliens to specific pick up locations, warning

4   accomplices about law enforcement activity in the area and the status of check-point

5   operations, and communicating with co-conspirators who guide aliens, coordinate drop off

    locations, and/or operate alien stash houses.

6          8.     The smuggling of aliens generates many types of evidence, including, but not

7   limited to, cellular phone-related evidence such as voicemail messages referring to the

8   arrangements of travel, names, photographs, text messaging (via SMS or other

    applications), and phone numbers of co-conspirators and illegal aliens.  For example,

9   drivers and passengers responsible for transporting illegal aliens are typically in telephonic

10  contact with co-conspirators immediately prior to and/or following the crossing of the

11  illegal aliens at the border, at which time they receive instructions, including where to pick-

    up the illegal aliens for transportation into the United States and where to take the illegal

12  aliens after crossing into the United States.  These communications may also include

13  locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in

14  telephonic contact with co-conspirators prior to and following their crossing in order to

    make smuggling arrangements, receive instructions, and report their locations after

15  crossing.  It is common for alien smugglers to be in contact with co-conspirators weeks to

16  months in advance of an event to recruit drivers and to coordinate the event. It is also

17  common for co-conspirators to continue to contact each other by phone calls, social media,

    or messaging applications when contact is lost with the driver after an apprehension has

18  occurred.

19         9.     Based upon my training, experience, and consultations with law enforcement

20  officers experienced in alien smuggling investigations, and all the facts and opinions set

21

3

forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10.     This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a.     tending to indicate efforts to smuggle aliens from Mexico into the United States;

b.     tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.     tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.     tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.     tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

4

1

2    f.    tending to place in context, identify the creator or recipient of, or establish the
          time of creation or receipt of communications, records, or data involved in the
          activities described above.

3                         **FACTS SUPPORTING PROBABLE CAUSE**

4    11.    On January 23, 2023, at approximately 8:13 P.M., Julio Cesar AHUMADA
5    (Defendant), a United States citizen, applied for admission into the United States from
     Mexico via the San Ysidro, California Port of Entry as the driver, registered owner and
6    sole visible occupant of a Toyota Scion tC, bearing California license plates.  Upon
7    inspection before a United States Customs and Border Protection (CBP) Officer, Defendant
8    showed a picture of his California Drivers License on his cell phone and said he was going
     to work as a DoorDash driver.  The CBP Officer conducted a cursory inspection of the
9    vehicle and discovered two individuals hiding inside the trunk.  The officer radioed for
10   assistance and Defendant was escorted to the security office for further investigation.  The
11   vehicle was driven to the secondary inspection lot by another officer.

12   12.    In secondary, two females were removed from the trunk of the vehicle and
     were later identified as Carmela DIONISIO Morales, (Material Witness 1) and Abelina
13   ZEPEDA Hernandez (Material Witness 2), both citizens of Mexico with no entitlements to
14   enter, reside or pass through the United States; both were held as Material Witnesses.

15   13.    During video-recorded interviews, Material Witnesses stated they are citizens
     of Mexico by virtue of birth in Puebla, Mexico.  Material Witness 1 stated her smuggling
16   arrangements were made by family members.  Material Witness 2 stated her smuggling
17   arrangements were made by her cousin, Carmela (Material Witness 1).  Both Material
18   Witnesses stated they were going to pay an unknown amount for being smuggled into the
     United States, with an intended destination to Los Angeles, California.

19   14.    The Target Devices, (Target Device 1 and Target Device 2), were located
20   inside of the vehicle driven by AHUMADA and were subsequently seized.

5

21

15.     Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Devices.  In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the Target Device to communicate with others to further the smuggling of illegal aliens into the United States.  Further, in my training and experience, alien smugglers may be involved in the planning and coordination of transporting and smuggling events in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the aliens. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on December 25, 2022, up to and including January 23, 2023.

## METHODOLOGY

16.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones, tablets, and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a

secure environment or, if possible, started in "flight mode" which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17.    Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

19.    Law enforcement has previously attempted to obtain the evidence sought by this warrant through the owner's consent and consent was not given.

**CONCLUSION**

20.     Based on the facts and information set forth above, there is probable cause to believe that a search of the Target Device will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324.

21.     Because the Target Device was seized at the time of AHUMADAS's arrest and have been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the Target Device. As stated above, I believe that the appropriate date range for this search is from December 25, 2022, through January 23, 2023.

22.     Accordingly, I request that the Court issue warrants authorizing law enforcement to search the item described in Attachment A-1 and A-2, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.


_____

Ramon A. Galindo, CBP Enforcement Officer


Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 25th day of January, 2023.

_____

HON. DANIEL E. BUTCHER
United States Magistrate Judge

8

## **ATTACHMENT A-1**

### PROPERTY TO BE SEARCHED

The following property is to be searched:

>Red iPhone Cellular Phone
>Case Number:  SYS-23-01-0064
>
>("Target Device 1")

Target Device is currently in the custody of the Department of Homeland Security, Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, CA.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-1 and A-2, includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below.   The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence e to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of December 25, 2022 to January 23, 2023:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Devices and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8, United States Code, Section 1324.